UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 09 cv 7429 |
| v. | ) ) | Honorable Blanche M. Manning |
| CANOPY FINANCIAL, INC., and JEREMY J. BLACKBURN, | ) ) ) ) | Magistrate Judge Maria Valdez |
| Defendants. | ) ) | |

### DEFENDANT JEREMY J. BLACKBURN'S MOTION TO MODIFY ASSET FREEZE ORDER WITH REQUEST FOR EXPEDITED REVIEW

Pursuant to Section II of the Preliminary Injunction Order Against Jeremy J. Blackburn (the "Preliminary Injunction Order") and the Court's inherent authority, Defendant Jeremy J. Blackburn ("Blackburn") files this Motion to Modify Asset Freeze Order (the "Motion"). Mr. Blackburn respectfully requests that this Court modify the Asset Freeze Order to allow him access to a portion of the frozen funds so that he may pay reasonable living expenses, attorneys' fees, and mortgages on valuable assets. Because the Asset Freeze Order encompasses all of his assets, Mr. Blackburn respectfully requests expedited consideration of this Motion.

### Statement of Facts

Mr. Blackburn is a co-founder and former Chief Operating Officer of Canopy Financial, Inc. ("Canopy").[1] On November 30, 2009, the United States Securities & Exchange

---

[1] Ex. 1, Blackburn Declaration ¶ 2.

Commission (the "SEC") filed this enforcement action under seal, alleging multiple securities law violations by Canopy and Mr. Blackburn.[2]

Approximately one week <u>before</u> the SEC filed its Complaint in this matter and before he learned that any federal agency was investigating Canopy, Mr. Blackburn, through his counsel, contacted the United States Attorney's Office for the Northern District of Illinois to make a voluntary disclosure concerning the fraud that occurred at Canopy.[3]   Mr. Blackburn's counsel met with federal prosecutors for several hours on November 30, 2009 and offered to bring Mr. Blackburn from Los Angeles to Chicago to explain his misconduct and the misconduct of others that were involved in the fraud that occurred at Canopy.

On December 1, 2009, Mr. Blackburn met with and was interviewed by the United States Attorney's Office and the Federal Bureau of Investigation.[4]   During the course of that meeting, Mr. Blackburn was served a copy of the SEC's Complaint, the Temporary Restraining Order, and the Asset Freeze Order.[5]   Mr. Blackburn also was charged on November 30 with one count of wire fraud in a criminal complaint filed by the United States Attorney's Office.[6]   On the afternoon of December 1, Mr. Blackburn made his initial appearance in the criminal case before Magistrate Judge Nolan and was released on personal recognizance without monitoring technology, pursuant to an unsecured bond and with the concurrence of the United States Attorney's Office.

---

[2] Docket No. 1 (SEC Complaint).

[3] Ex. 1, Blackburn Declaration ¶ 2.

[4] *Id.* ¶ 3.

[5] *Id*; *see* Docket Nos. 6 & 7 (Asset Freeze Order and Temporary Restraining Order).

[6] *United States of America v. Jeremy Blackburn*, Cause No. 09 CR 976-1.

Since December 1, Mr. Blackburn has continued actively cooperating and assisting the United States Attorney's Office, FBI, and SEC in the Canopy investigation.[7]  On December 4, 2009, Mr. Blackburn provided the FBI and United States Attorney's Office with 545 pages of e-mails and attachments that Mr. Blackburn and his counsel had identified as relevant to the Government's investigation.  Mr. Blackburn's attorneys are assisting him with his cooperation efforts, have attended multiple meetings with the United States Attorney's Office, FBI, and SEC,[8] and have produced thousands of pages of additional records to the Government.

Mr. Blackburn also has accommodated several requests from federal authorities.  For example, Mr. Blackburn agreed to the Preliminary Injunction Order entered by this Court on December 8, 2009.[9]  He also voluntarily consented to the FBI's seizure of certain valuable assets in Mr. Blackburn's possession, including a watch collection (valued at approximately $2.25 million) and a 2009 Bentley (valued at approximately $164,800).[10]  Pursuant to the Preliminary Injunction Order, Mr. Blackburn also has provided the SEC with a personal accounting that includes schedules of assets, liabilities, and transfers over $5,000 within the past 90 days and more than 400 pages of financial records.[11]  Additionally, Mr. Blackburn recently moved from California to the Chicago area to facilitate his cooperation with the Government's investigation.[12]

---

[7] Ex. 1, Blackburn Declaration ¶ 4.

[8] *Id.*

[9] *See* Docket No. 16.

[10] Ex. 1, Blackburn Declaration ¶ 5.

[11] *Id.*; *see also* Ex. 2, Blackburn Asset Schedule (a true and correct copy of the asset schedule previously provided to the SEC).

[12] Ex. 1, Blackburn Declaration ¶ 5.

## Request for Limited Relief

Mr. Blackburn respectfully requests limited relief from the Asset Freeze Order so that he can (1) protect the "Zumeriz Property" and the "Minnesota Property"[13] from foreclosure, (2) provide for his living expenses, and (3) pay attorneys' fees. The Asset Freeze Order freezes "all funds and other assets held in the name of Defendant Blackburn" or for his benefit.[14] Under the terms of the Asset Freeze Order, Mr. Blackburn cannot access any funds in any of his bank accounts for any purpose.[15]

Mr. Blackburn has resigned his position at Canopy Financial and is currently unemployed.[16] He also has a wife and twenty-one month-old son who have no other known source of income.[17] Because of the substantial amount of time that Mr. Blackburn is spending cooperating with federal agencies, compiling financial information, and gathering financial records, he has been unable to search for full-time employment,[18] and it is almost inconceivable that he could find meaningful employment in light of the pending criminal complaint and his cooperation efforts.

In light of these responsibilities, Mr. Blackburn requests that the Court modify the Asset Freeze Order to allow him access to $200,000 of funds. Lakeshore Motor Cars is currently

---

[13] The Zumeriz Property is a home owned by Mr. Blackburn in Malibu, California. Mr. Blackburn currently has approximately $2.1 million of equity in the Zumeriz Property. *See* Ex. 2, Blackburn Asset Schedule. *See* discussion of the Minnesota Property *infra* note 19.

[14] Docket No. 6 at 2 (Asset Freeze Order).

[15] *Id.* at 2-3. Specifically, the Asset Freeze Order restrains Mr. Blackburn from transferring, selling, liquidating, withdrawing, or making any other use of the "funds, assets or other property . . . directly or indirectly owned or controlled by Defendant Blackburn." *Id.*

[16] Ex. 1, Blackburn Declaration ¶ 6.

[17] *Id.* Mr. Blackburn's spouse has a separate bank account that she has been using to support herself and their child for the past several weeks. Upon information and belief, Mrs. Blackburn currently does not have any other source of funds.

[18] *Id.*

holding $335,000 on behalf of Mr. Blackburn. A portion of these funds are believed to relate to a vehicle that Mr. Blackburn acquired in 2008 (prior to the 2009 Series D Financing that forms the basis of the SEC's Complaint). In addition, Mr. Blackburn has approximately $122,000 of equity in the Minnesota Property, which was also acquired in 2008.[19] The requested relief will permit Mr. Blackburn to pay the mortgages on valuable real estate assets and provide for living expenses and attorneys' fees for the next three to six months, while he continues his cooperation. It is anticipated that the Government will require the assistance of Mr. Blackburn's attorneys during this period.

Mr. Blackburn is requesting very limited relief from the Asset Freeze Order, especially considering that his net assets currently total approximately $6.20 million.[20] The requested relief totals approximately 3% of Mr. Blackburn's net assets and is significantly less than the value of assets acquired by Mr. Blackburn before the Series D Financing at issue in the SEC's Complaint.

Mr. Blackburn's counsel and the SEC have discussed the reasons supporting the requested relief, but the SEC has declined to agree to a modification of the Asset Freeze Order. Mr. Blackburn agreed to postpone filing of this Motion until after the intervening holidays as an accommodation to the Government.

## Arguments and Authorities Supporting the Requested Relief

The Court should exercise its discretion to modify the Asset Freeze Order. Mr. Blackburn's request for limited relief represents only a small percentage of his total net assets, and this relief is necessary to prevent foreclosure of valuable real estate assets, provide for

---

[19] *See* Ex. 2, Blackburn Asset Schedule. The Minnesota Property is undeveloped real estate property in Stillwater, Minnesota, that Mr. Blackburn acquired in June 2008. *Id.*

[20] Mr. Blackburn's asset schedule reports net assets of approximately $6.30 million. *See* Ex. 2, Blackburn Asset Schedule. Mr. Blackburn owes an additional $100,000 on a personal loan, resulting in total net assets of approximately $6.20 million. *Id.*

necessary living expenses, and allow Mr. Blackburn's counsel to continue representing him while he cooperates with the Government.

If the requested relief is not granted, several events will likely occur. First, Mr. Blackburn will be unable to provide for himself and will have no source of meaningful support except public welfare. Second, the real estate assets will likely be foreclosed and liquidated at distressed prices, reducing the funds available to compensate Canopy investors. Finally, Mr. Blackburn will lose the benefit of legal counsel that has substantial knowledge and understanding of the facts at issue, including a very complex series of financial transactions. Moreover, the United States Attorney's Office, FBI, and SEC would similarly be deprived of the benefit of counsel's knowledge during the cooperation process, which presumably has already reduced the Government's investigative time and expense.

### A.    An Asset Freeze Merits Careful Consideration.

While federal courts have the authority to enter freeze orders in SEC enforcement actions, "the decision to order a temporary freeze on defendants' assets as ancillary relief in an SEC enforcement action requires particularly careful consideration."[21]   In a frequently-cited opinion, the Second Circuit observed:

> Freezing assets under certain circumstances, however, might thwart the goal of compensating investors if the freeze were to cause such a disruption of defendants' business affairs that they would be financially destroyed. Thus, the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief.[22]

---

[21] *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972).

[22] *Id.* at 1106; *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001) (same).

Further, the SEC "is not entitled to freeze assets unrelated to its investigation."[23]   As indicated on the asset schedule, Mr. Blackburn owns several assets, including the Minnesota Property, which predate the allegations in the SEC's Complaint.[24]

**B.     A Modification Is Necessary to Protect Real Estate Equity for Investors.**

One important reason for granting the requested relief is to ensure that the mortgage on the Zumeriz Property is kept current and does not go into foreclosure.  Mr. Blackburn and his spouse own three properties: the Zumeriz Property, the Minnesota Property, and the "Minnesota Home" where Mr. Blackburn's spouse and child resided prior to moving to California.[25]   The monthly mortgage payments on these properties are $13,000; $5,200; and $4,890, respectively.[26]

Mr. Blackburn has equity of approximately $2.1 million in the Zumeriz Property[27]   The SEC recently expressed its desire that Mr. Blackburn transfer ownership of the Zumeriz Property so that the property can be sold and the proceeds used to compensate investors.  Mr. Blackburn agrees that an orderly sale of this property will yield substantially more proceeds for distribution to investors than an auction following foreclosure.   If the requested relief is granted, Mr. Blackburn will bring the mortgages on the Zumeriz Property and Minnesota Property current and pay the combined monthly mortgage amount of $18,200 until a transfer can be accomplished.

**C.     Living Expenses.**

When considering requests to unfreeze funds for living expenses, courts "look for

---

[23] *SEC v. Bremont*, 954 F. Supp. 726, 733 (S.D.N.Y. 1997).

[24] *See* discussion *supra* note 19.

[25] Ex. 1, Blackburn Declaration ¶ 7.  The Zumeriz Property is titled in Mr. Blackburn's name.  *Id.*

[26] *Id.*

[27] Ex. 2, Blackburn Asset Schedule.

evidence of the defendant's overall assets or income."[28]  To his knowledge, Mr. Blackburn is the

sole source of income for two households, but he has no full-time employment.[29]  Mr. Blackburn

has recently performed some part-time work in an effort to earn some income, but he does not

have any regular source of income.[30]  In *SEC v. Dowdell*, a federal district court modified an

asset freeze order and authorized monthly payments of $4,000.00, $1,700.00, and $2,500.00 for

three defendants who represented they had no other source of income, but needed funds for

"ordinary" expenses such as phone bills, utilities, life insurance, and medical expenses.[31]  This

Court should similarly grant Mr. Blackburn's requested relief so that he can pay for these

necessities.[32]

### D.    Attorneys' Fees.

This limited relief will also ensure that Mr. Blackburn's counsel is able to continue

representing him while he resolves the pending civil and criminal matters and continues his

cooperation with the Government.  All of Mr. Blackburn's legal fees related to this matter have

been in furtherance of his cooperation with the Government's investigation.  Mr. Blackburn has

already produced to the Government a substantial number of documents that K&L Gates LLP

("K&L Gates") identified during its investigation into issues at Canopy Financial.  K&L Gates'

continued involvement in this matter will not only benefit the Government's investigation, but

---

[28] *See, e.g., SEC v. Dowdell*, 175 F. Supp. 2d 850, 854-55 (W.D. Va. 2001); *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429-30 (S.D.N.Y. 2001).

[29] Ex. 1, Blackburn Declaration ¶ 6 (confirming that Mr. Blackburn is unemployed and does not know of any other source of income for his spouse and son).  *See* discussion *supra* note 17 regarding the separate bank account maintained by Mr. Blackburn's spouse.

[30] *Id.*

[31] 175 F. Supp. 2d at 854-55 (noting one defendant's spouse earned $100 per week).

[32] Mr. Blackburn recently returned to Chicago and has moved residences within the past twenty days. Ex. 1, Blackburn Declaration ¶ 5. Accordingly, he is unable to provide a precise listing of what his monthly expenses will be going forward.

will help ensure an efficient resolution to Mr. Blackburn's pending civil and criminal proceedings.

Federal courts have afforded defendants seeking relief from asset freeze orders in SEC enforcement actions the opportunity to establish that a portion of their frozen assets are not traceable to the alleged fraud.[33]  As indicated on the asset schedule, Mr. Blackburn owns several assets that predate the alleged fraud related to the 2009 Series D Financing.[34]

Some courts have not even required this much of defendants.  The district court in *SEC v. Dowdell* did not even reach the issue of whether frozen funds were tainted by fraud and simply ordered defendants' attorneys to file reasonable estimates of "the fees necessary to take them through the hearing on [a] preliminary injunction."[35]

Ultimately, the decision to modify the Asset Freeze Order is entrusted to the sound discretion of the Court.[36]  As described above, Mr. Blackburn is cooperating fully with the Government's investigation.  He now seeks limited relief to provide for living expenses, to protect valuable assets that can be used to compensate investors, and to continue to allow his attorneys to assist him in his cooperation efforts.  In light of these facts, this Court should grant Mr. Blackburn's request for limited relief and modify the Asset Freeze Order.

---

[33] *See, e.g., SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993); *Dowdell*, 175 F. Supp. 2d at 855-56 (describing approaches used by federal courts when addressing asset freeze modifications for attorneys' fees).

[34] Ex. 2, Blackburn Asset Schedule.

[35] 175 F. Supp. 2d at 856 (noting concern about the fairness of injunction proceedings); *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001) (modifying asset freeze to permit payment of legal fees by defendants who had incurred "substantial expenses as a consequence" of an SEC enforcement action).

[36] *SEC v. Cherif*, 933 F.2d 403, 416-17 (7th Cir. 1991) (applying abuse of discretion standard to district court's ruling on defendants' request to modify preliminary injunctions and unfreeze funds for attorneys' fees); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105-06 (2d Cir. 1972) (holding district court's temporary asset freeze was an appropriate exercise of its equity powers).

**WHEREFORE,** Defendant Jeremy Blackburn respectfully prays that the Court enter an Order amending and/or modifying the Asset Freeze Order and Preliminary Injunction Order as requested, and for such other relief to which Defendant may be justly entitled.

Respectfully submitted,

/s/   Steven M. Kowal
Steven M. Kowal (Illinois Bar No. 6190285)
Kenneth E. Rechtoris  (Illinois Bar No. 1518446)

**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Phone:  (312) 372-1121
Fax:  (312) 827-8000

**ATTORNEYS FOR DEFENDANT
JEREMY J. BLACKBURN**

Dated:  January 8, 2010

## CERTIFICATE OF CONFERENCE

A conference was held between counsel for Plaintiff, the United States Securities and Exchange Commission, and counsel for Defendant Jeremy Blackburn regarding the matters described in this Motion.  Counsel could not reach agreement on the relief requested in this Motion.

/s/   Steven M. Kowal